December 11, 2009

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
Civil Action No. 08-1295

RECEIV~~
JAN 2 8 2010

~~J. R. SCHNEIDER~~
~~U.S. Magistrate Judge~~

In Regard to the Matter of:

Bayside State Prison
Litigation

BARRY SWEETEN

     -vs-

WILLIAM H. FAUVER, et al,

       Defendants.

OPINION/REPORT
OF THE
SPECIAL MASTER

\*     \*     \*     \*

FRIDAY, DECEMBER 11, 2009

\*     \*     \*     \*

BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER

1

2

3

4

5           Transcript of proceedings in the above

6    matter taken by Theresa O. Mastroianni, Certified

7    Court Reporter, license number 30X100085700, and

8    Notary Public of the State of New Jersey at the

9    United States District Court House, One Gerry Plaza,

10   Camden, New Jersey, 08102, commencing at 11:33 AM.

11

12

13

14

15

16

17

18

19           MASTROIANNI & FORMAROLI, INC.

20      Certified Court Reporting & Videoconferencing

21              251 South White Horse Pike

22             Audubon, New Jersey 08106

23                  856-546-1100

24

25

```
 1

 2    A P P E A R A N C E S:

 3

 4

         LOUGHRY & LINDSAY, ESQUIRES
 5       BY:  JUSTIN T. LOUGHRY, ESQUIRE
              - and -
 6       BY:  LAWRENCE D. LINDSAY
         330 MARKET STREET
 7       CAMDEN, NEW JERSEY 08102
         856-968-9201
 8       ATTORNEYS FOR THE PLAINTIFFS

 9


10

         ROSELLI, GRIEGEL, LOZIER & LAZZARO, PC
11       BY:  MARK ROSELLI, ESQUIRE
              - and -
12       BY:  KENNETH W. LOZIER, ESQUIRE
         1337 STATE HIGHWAY 33
13       HAMILTON SQUARE, NEW JERSEY  08690
         609-586-2257
14       ATTORNEYS FOR THE DEFENDANTS

15

16

17

18

19

20

21

22

23

24

25
```

December 11, 2009

Page 4

1                 JUDGE BISSELL:  We are reopening

2     proceedings in the matter of Barry Sweeten versus

3     William Fauver, et al.  Docket number 08-1295 for the

4     purpose of stating the Special Master's determination

5     in that matter.

6                      This opinion/report is being issued

7     pursuant to the directives of the Order of Reference

8     to a Special Master and the Special Master's

9     Agreement and the guiding principles of law which

10    underlie this decision to be applied to the facts

11    upon which it is based as set forth in the jury

12    instructions in the Walker and Mejias jury charges to

13    the extent applicable to the allegations of Mr.

14    Sweeten.

15                     As finalized after review under Local

16    Civil Rule 52.1, this transcript will constitute the

17    written report required under paragraph seven of the

18    Order of Reference to a Special Master.

19                     Mr. Sweeten was in D Tent at the time

20    that it was searched on August 14, 1997.  He had

21    arrived in D Tent in late July of that year.

22                     He testified as to certain incidents

23    that occurred to him regarding alleged assaults by

24    SOG officers during the course of his and his fellow

25    inmates' extraction from D Tent for purposes of

December 11, 2009

Page 5

1   searches.  In fact, at some point relatively soon

2   after the events which he alleges took place, he even

3   prepared a map of the activities of the officers in

4   the tent on the date in question, including

5   references to locations where he was assaulted in the

6   presence of other inmates in the tent and others.

7   This diagram was introduced as P-160 in evidence in

8   the case.

9                His description of the assaults

10  perpetrated upon him, varying slightly at various

11  segments of his testimony, I think can be put

12  together from certain excerpts of his testimony which

13  I will read into the record at this time.

14               He testified on January 20th, 2009 and

15  the first of these entries begins at page 11 and runs

16  from line six through 15.  SOG was already there and

17  had issued instructions and the testimony now begins:

18               "Question:  And what happened to you,

19  sir?

20               "Answer:  When they got around to my

21  area, I was told to get up off the floor and I

22  started getting dressed.  That's when I received the

23  first blow over onto the bed.

24               "Question:  What kind of a blow was it?

25               "Answer:  Just like a push and then

December 11, 2009

1    forward motion onto the bed.  Then I was kicked in

2    the ribs.  And then two more times on the way going

3    out the door.  A total of three times."

4                He testifies further on the subject of

5    these assaults now with reference to P-160, his

6    diagram.

7                "Question:  Down at the bottom on the

8    right you have a K, location where --

9                "Answer:  Where I was last kicked.

10               "Question:  Where is that on the actual

11   diagram?

12               "Answer:  Right near the door entrance

13   where the steps are to go down and come in.  And I

14   was handcuffed while I was kicked in the back and

15   almost fell flat on my face as I was going out the

16   door.

17               "Question:  Now, further up the top you

18   have on the top left under D Tent --

19               "Answer:  Yes.

20               "Question:  -- position where I was

21   first kicked?

22               "Answer:  Yes, that's right next to my

23   bed area.

24               "Question:  Is that the kick you

25   described in the back?

1          "Answer:  Yes.

2          "Question:  I'm trying to get the

3     chronology down.  You got pushed onto your bed, and

4     then you got kicked in the back?

5          "Answer:  Yes."

6          At that point he then talks about the

7     extent of the pain that was inflicted.  There was

8     some pain inflicted from the assault itself.  He said

9     that became exacerbated as a result of having to sit

10    in the gym later, but that as well he had a

11    pre-existing back pain condition from warehouse work

12    that he used to do involving a lot of heavy lifting.

13         While we're on this subject at this

14    point, because I am going to make a determination

15    that he has made out a cause of action here, I will

16    tell you that the injuries which were predominantly

17    to his back as a result of the assaults perpetrated

18    upon him aggravated a pre-existing condition.  But

19    over time this assault was not a significant

20    contributor to any long-lasting effects.  Any

21    long-lasting effects are from the pre-existing

22    condition itself.  However, there is no doubt that

23    pain was inflicted at the time and that it

24    exacerbated an ongoing back pain problem.  It

25    eventually abated with the initial ongoing condition

 1    then continuing.

 2                    Turning now to the alleged assaults as

 3    they took place, page 21 beginning at line seven,

 4    that testimony continues.

 5                    "Question:  Sir, you were describing

 6    the assault.  You got kicked in the back.  Were you

 7    on the ground then?

 8                    "Answer:  Yes, I was.

 9                    "Question:  What happened next?

10                    "Answer:  That was when they told me to

11    get up off the ground and get dressed.

12                    "Question:  Did you do that?

13                    "Answer:  Yes, I did everything they

14    told me to do.  There was no reason for them to lay

15    hands upon me.

16                    "Question:  Did there come a time when

17    they stepped on your neck?

18                    "Answer:  To hold me down until they

19    were ready to put the handcuffs on me.

20                    "Question:  Where was that?

21                    "Answer:  Right alongside the bed,

22    parallel to it.

23                    "Question:  Can you describe what they

24    did?

25                    "Answer:  He just basically held me

December 11, 2009

1   down.  And I couldn't say nothing.  And they just put

2   the handcuffs and they said, get up.  And that's when

3   I received the second and third blow going out the

4   door, about in the middle and right near the door.

5                  "Question:  You said the second and

6   third blow, were they punches or kicks?

7                  "Answer:  Kicks, because when I took my

8   T-Shirt off, I had black boot marks on my T-shirt.

9                  "Question:  You didn't describe, I

10  don't think, the standing on your neck.  Can you

11  describe that particularly --

12                 "Answer:  Basically it was like he had

13  his foot as a wedge holding it down just so I

14  wouldn't move.  That was basically it.  Wasn't like a

15  heavy blow or a kick.  The one blow or kick was just

16  to the rib.  And I had a small bruise from that."

17                 So that's a description of the events

18  that occurred to him.

19                 Mr. Sweeten had some indications in his

20  own mind that not only the SOG units were involved,

21  but also Bayside officers in this assault, Bayside

22  officers being dressed similarly.  I find, however,

23  that that is not the fact.  There is nothing here to

24  indicate that standard operating procedures were not

25  employed in which SOG officers alone entered the

December 11, 2009

Page 10

1    units involved, including tents, to perform the

2    extraction of the inmates involved.

3              While there was defense testimony that

4    could lay some doubt as to whether SOG conducted

5    themselves in this fashion on this occasion, I find

6    that there is no evidence that is compelling that

7    would lead me to any conclusion other than the fact

8    that for reasons merely of exerting authority and

9    moving Mr. Sweeten out of his bunk area through the

10   unit and out for transport to the gym that these

11   events did occur.  Frankly, I find them totally

12   excessive and unnecessary for the purpose of the

13   extrication of this inmate.  He was a new arrival on

14   the premises, as were almost all occupants of the

15   tents, with no indication that this was a person who

16   would be particularly difficult or violent or

17   resisting or one who would need, shall we say, any

18   type of physical discipline for the purpose of

19   exercising authority.

20             I find, therefore, that under the

21   definitions supplied in the governing jury

22   instructions here, that there was excessive force

23   employed and cruel and unusual punishment inflicted

24   upon Mr. Sweeten.

25             In reaching this decision, I am not

December 11, 2009

1   unmindful of testimony by Mr. Sweeten in the course

2   of his depositions and elsewhere, also as revealed in

3   Exhibit P-170 which was the Internal Affairs

4   Investigator's Report of this incident which is

5   contradictory and, in fact, in some cases truly

6   inaccurate, although under oath.  I've considered

7   this in connection with assessing the credibility of

8   Mr. Sweden.  And I have concluded that although these

9   exposures, mostly in the course of cross-examination,

10  did have an impact on his credibility, as indeed they

11  should have, that impact was not so substantial as to

12  lead the undersigned to a conclusion that Mr. Sweeten

13  did not testify accurately with regard to the events

14  that happened to him in D Tent.  Let me go through

15  those for a moment just so the record is clear.

16              In his deposition, for instance, he

17  denied that he had any prior back injury that was

18  work related.  However, prior to August of 1997 he

19  had advised medical personnel at Bayside State Prison

20  of a chronic back pain and condition.

21              Secondly, he denied that he had any

22  psychiatric problems before his arrival at Bayside

23  Prison.  And that was also in his deposition.  But at

24  trial he admitted that he had had such psychiatric

25  problems, including, as best I can recall, a bipolar

1    condition.

2                    In his deposition he had denied any

3    prior suicide attempts before his arrival at Bayside,

4    although he acknowledged that a suicide attempt

5    ensued at Bayside several months after the lockdown.

6    However, on cross-examination it was revealed and he

7    had to acknowledge, this is during the trial, that in

8    1996 he had made a suicide attempt at the Gloucester

9    County Jail.  He had to make that admission either at

10   his trial or his deposition after having been

11   confronted with that event.

12                   Finally, when confronted with charges

13   that were brought against him for altering medical

14   forms, in order, among other things, to secure the

15   privileges of a lower bunk with a double mattress, he

16   denied guilt regarding the altering of those forms

17   and continued to do so here before this Special

18   Master.  However, in Exhibit P-170 a report of his

19   interview with Internal Affairs reveals that after

20   initially denying it, he eventually admitted that he

21   had altered those forms in an incident that involved

22   mail coming back and forth from the prison between

23   him and his mother.

24                   So these were all events that did,

25   indeed, have an impact upon Mr. Sweeten's

December 11, 2009

1    credibility.  However, I find that his precise

2    testimony with regard to the events that transpired

3    before me, without any efforts to embellish, enhance

4    or exaggerate either the punishment inflicted or its

5    results, has that ring of truth that leads me to

6    conclude that he has established his claim here.

7              There was, indeed, excessive,

8    unnecessary and sadistic force imposed upon Mr.

9    Sweeten within the comtemplation of the jury

10   instructions in Walker and Mejias that apply.

11   However, in light of the fact that the striking of

12   Mr. Sweeten was neither prolonged, repeated, nor

13   particularly severe in its consequences, while

14   actionable for recovery of compensatory damages, I do

15   not find that this assault visited upon him rose to

16   the level of being so egregious as to support a claim

17   for punitive damages, at least against the

18   unidentified officers who were with him and who

19   inflicted the injuries involved.

20             Finally, although not every item of

21   evidence has been discussed in this opinion/report,

22   all evidence presented to the Special Master was

23   reviewed and considered.  I do want to add quickly at

24   this point, however, because it will come up in my

25   forthcoming decisions in their own cases, that I

1    considered also the testimony submitted in support of

2    Mr. Sweeten's case by plaintiffs Andre Jarrells and

3    Robin Lewis who were also occupants of D Tent at the

4    time of this incident.  Their testimony, however, is

5    so inherently incredible, as the decisions in those

6    cases will reveal, that I find it lent no support to

7    Mr. Sweeten's case.  However, as noted above, he

8    prevailed without it.

9              I find the injury here was actionable.

10   I find that the injury was acute initially, but did

11   not remain a part of Mr. Sweeten's permanent back

12   condition, that being something which preexisted.  I

13   note also that the record reveals that there were no

14   substantial restrictions on Mr. Sweeten's activities

15   after the events in question.

16             Accordingly, I recommend in this report

17   that the District Court enter an award of

18   compensatory damages in the amount of $3,500 in

19   Mr. Sweeten's favor.

20

21

22

23

24

25

December 11, 2009

1                    C E R T I F I C A T E

2

3        I, Theresa O. Mastroianni, a Notary Public and

4   Certified Shorthand Reporter of the State of New

5   Jersey, do hereby certify that the foregoing is a

6   true and accurate transcript of the testimony as

7   taken stenographically by and before me at the time,

8   place, and on the date hereinbefore set forth.

9        I DO FURTHER CERTIFY that I am neither a

10  relative nor employee nor attorney nor counsel of any

11  of the parties to this action, and that I am neither

12  a relative nor employee of such attorney or counsel,

13  and that I am not financially interested in the

14  action.

15

16

17

18

19        *Theresa O. Mastroianni*
          Theresa O. Mastroianni, C.S.R.
20        Notary Public, State of New Jersey
          My Commission Expires May 5, 2010
21        Certificate No. XIO857
          Date: December 15, 2009
22

23

24

25

**A**

abated 7:25
accurate 15:6
accurately 11:13
acknowledge
   12:7
acknowledged
   12:4
action 1:2 7:15
   15:11,14
actionable 13:14
   14:9
activities 5:3
   14:14
actual 6:10
acute 14:10
add 13:23
admission 12:9
admitted 11:24
   12:20
advised 11:19
Affairs 11:3
   12:19
aggravated 7:18
Agreement 4:9
al 1:9 4:3
allegations 4:13
alleged 4:23 8:2
alleges 5:2
alongside 8:21
altered 12:21
altering 12:13
   12:16
amount 14:18
Andre 14:2
Answer 5:20,25
   6:9,12,19,22
   7:1,5 8:8,10,13
   8:18,21,25 9:7
   9:12
applicable 4:13
applied 4:10
apply 13:10
area 5:21 6:23
   10:9

arrival 10:13
   11:22 12:3
arrived 4:21
assault 7:8,19
   8:6 9:21 13:15
assaulted 5:5
assaults 4:23 5:9
   6:5 7:17 8:2
assessing 11:7
attempt 12:4,8
attempts 12:3
attorney 15:10
   15:12
ATTORNEYS
   3:8,14
Audubon 2:22
August 4:20
   11:18
authority 10:8
   10:19
award 14:17

**B**

back 6:14,25 7:4
   7:11,17,24 8:6
   11:17,20 12:22
   14:11
Barry 1:7 4:2
based 4:11
basically 8:25
   9:12,14
Bayside 1:5 9:21
   9:21 11:19,22
   12:3,5
bed 5:23 6:1,23
   7:3 8:21
beginning 8:3
begins 5:15,17
best 11:25
bipolar 11:25
BISSELL 1:21
   4:1
black 9:8
blow 5:23,24 9:3
   9:6,15,15
boot 9:8

bottom 6:7
brought 12:13
bruise 9:16
bunk 10:9 12:15

**C**

C 3:2 15:1,1
Camden 2:10
   3:7
case 5:8 14:2,7
cases 11:5 13:25
   14:6
cause 7:15
certain 4:22
   5:12
Certificate
   15:21
Certified 2:6,20
   15:4
certify 15:5,9
charges 4:12
   12:12
chronic 11:20
chronology 7:3
Civil 1:2 4:16
claim 13:6,16
clear 11:15
come 6:13 8:16
   13:24
coming 12:22
commencing
   2:10
Commission
   15:20
compelling 10:6
compensatory
   13:14 14:18
comtemplation
   13:9
conclude 13:6
concluded 11:8
conclusion 10:7
   11:12
condition 7:11
   7:18,22,25
   11:20 12:1

   14:12
conducted 10:4
confronted
   12:11,12
connection 11:7
consequences
   13:13
considered 11:6
   13:23 14:1
constitute 4:16
continued 12:17
continues 8:4
continuing 8:1
contradictory
   11:5
contributor 7:20
counsel 15:10,12
County 12:9
course 4:24 11:1
   11:9
Court 1:1 2:7,9
   2:20 14:17
credibility 11:7
   11:10 13:1
cross-examina...
   11:9 12:6
cruel 10:23
C.S.R 15:19

**D**

D 3:6 4:19,21,25
   6:18 11:14
   14:3
damages 13:14
   13:17 14:18
date 5:4 15:8,21
December 1:15
   15:21
decision 4:10
   10:25
decisions 13:25
   14:5
Defendants 1:10
   3:14
defense 10:3
definitions

   10:21
denied 11:17,21
   12:2,16
denying 12:20
deposition 11:16
   11:23 12:2,10
depositions 11:2
describe 8:23
   9:9,11
described 6:25
describing 8:5
description 5:9
   9:17
determination
   4:4 7:14
diagram 5:7 6:6
   6:11
difficult 10:16
directives 4:7
discipline 10:18
discussed 13:21
District 1:1,2 2:9
   14:17
Docket 4:3
door 6:3,12,16
   9:4,4
double 12:15
doubt 7:22 10:4
dressed 5:22
   8:11 9:22

**E**

E 3:2,2 15:1,1
effects 7:20,21
efforts 13:3
egregious 13:16
either 12:9 13:4
embellish 13:3
employed 9:25
   10:23
employee 15:10
   15:12
enhance 13:3
ensued 12:5
enter 14:17
entered 9:25

entrance 6:12
entries 5:15
ESQUIRE 3:5
  3:11,12
ESQUIRES 3:4
established 13:6
et 1:9 4:3
event 12:11
events 5:2 9:17
  10:11 11:13
  12:24 13:2
  14:15
eventually 7:25
  12:20
evidence 5:7
  10:6 13:21,22
exacerbated 7:9
  7:24
exaggerate 13:4
excerpts 5:12
excessive 10:12
  10:22 13:7
exercising 10:19
exerting 10:8
Exhibit 11:3
  12:18
Expires 15:20
exposures 11:9
extent 4:13 7:7
extraction 4:25
  10:2
extrication
  ˙10:13

**F**
F 15:1
face 6:15
fact 5:1 9:23
  10:7 11:5
  13:11
facts 4:10
fashion 10:5
Fauver 1:9 4:3
favor 14:19
fell 6:15
fellow 4:24

finalized 4:15
Finally 12:12
  13:20
financially
  15:13
find 9:22 10:5
  10:11,20 13:1
  13:15 14:6,9
  14:10
first 5:15,23
  6:21
flat 6:15
floor 5:21
foot 9:13
force 10:22 13:8
foregoing 15:5
FORMAROLI
  2:19
forms 12:14,16
  12:21
forth 4:11 12:22
  15:8
forthcoming
  13:25
forward 6:1
Frankly 10:11
FRIDAY 1:15
further 6:4,17
  15:9

**G**
Gerry 2:9
getting 5:22
Gloucester 12:8
go 6:13 11:14
going 6:2,15
  7:14 9:3
governing 10:21
GRIEGEL 3:10
ground 8:7,11
guiding 4:9
guilt 12:16
gym 7:10 10:10

**H**
H 1:9

HAMILTON
  3:13
handcuffed 6:14
handcuffs 8:19
  9:2
hands 8:15
happened 5:18
  8:9 11:14
heavy 7:12 9:15
held 8:25
hereinbefore
  15:8
HIGHWAY
  3:12
hold 8:18
holding 9:13
HONORABLE
  1:21
Horse 2:21
House 2:9

**I**
impact 11:10,11
  12:25
imposed 13:8
inaccurate 11:6
incident 11:4
  12:21 14:4
incidents 4:22
including 5:4
  10:1 11:25
incredible 14:5
indicate 9:24
indication 10:15
indications 9:19
inflicted 7:7,8
  7:23 10:23
  13:4,19
inherently 14:5
initial 7:25
initially 12:20
  14:10
injuries 7:16
  13:19
injury 11:17
  14:9,10

inmate 10:13
inmates 4:25 5:6
  10:2
instance 11:16
instructions
  4:12 5:17
  10:22 13:10
interested 15:13
Internal 11:3
  12:19
interview 12:19
introduced 5:7
Investigator's
  11:4
involved 9:20
  10:1,2 12:21
  13:19
involving 7:12
issued 4:6 5:17
item 13:20

**J**
Jail 12:9
January 5:14
Jarrells 14:2
Jersey 1:2 2:8,10
  2:22 3:7,13
  15:5,20
JOHN 1:21
JUDGE 4:1
July 4:21
jury 4:11,12
  10:21 13:9
JUSTIN 3:5

**K**
K 6:8
KENNETH 3:12
kick 6:24 9:15
  9:15
kicked 6:1,9,14
  6:21 7:4 8:6
kicks 9:6,7
kind 5:24

**L**

late 4:21
law 4:9
LAWRENCE
  3:6
lay 8:14 10:4
LAZZARO 3:10
lead 10:7 11:12
leads 13:5
left 6:18
lent 14:6
level 13:16
Lewis 14:3
license 2:7
lifting 7:12
light 13:11
LINDSAY 3:4,6
line 5:16 8:3
Litigation 1:6
Local 4:15
location 6:8
locations 5:5
lockdown 12:5
long-lasting
  7:20,21
lot 7:12
LOUGHRY 3:4
  3:5
lower 12:15
LOZIER 3:10
  3:12

**M**
mail 12:22
map 5:3
MARK 3:11
MARKET 3:6
marks 9:8
Master 1:6,21
  4:8,18 12:18
  13:22
Master's 4:4,8
Mastroianni 2:6
  2:19 15:3,19
matter 1:4 2:6
  4:2,5
mattress 12:15

**medical** 11:19
12:13
**Mejias** 4:12
13:10
**merely** 10:8
**middle** 9:4
**mind** 9:20
**moment** 11:15
**months** 12:5
**mother** 12:23
**motion** 6:1
**move** 9:14
**moving** 10:9

**N**

**N** 3:2
**near** 6:12 9:4
**neck** 8:17 9:10
**need** 10:17
**neither** 13:12
15:9,11
**new** 1:2 2:8,10
2:22 3:7,13
10:13 15:4,20
**Notary** 2:8 15:3
15:20
**note** 14:13
**noted** 14:7
**number** 2:7 4:3

**O**

**O** 2:6 15:3,19
**oath** 11:6
**occasion** 10:5
**occupants** 10:14
14:3
**occur** 10:11
**occurred** 4:23
9:18
**officers** 4:24 5:3
9:21,22,25
13:18
**ongoing** 7:24,25
**operating** 9:24
**opinion/report**
1:5 4:6 13:21

**order** 4:7,18
12:14

**P**

**P** 3:2,2
**page** 5:15 8:3
**pain** 7:7,8,11,23
7:24 11:20
**paragraph** 4:17
**parallel** 8:22
**part** 14:11
**particularly**
9:11 10:16
13:13
**parties** 15:11
**PC** 3:10
**perform** 10:1
**permanent**
14:11
**perpetrated**
5:10 7:17
**person** 10:15
**personnel** 11:19
**physical** 10:18
**Pike** 2:21
**place** 5:2 8:3
15:8
**plaintiffs** 3:8
14:2
**Plaza** 2:9
**point** 5:1 7:6,14
13:24
**position** 6:20
**precise** 13:1
**predominantly**
7:16
**preexisted** 14:12
**premises** 10:14
**prepared** 5:3
**presence** 5:6
**presented** 13:22
**prevailed** 14:8
**pre-existing**
7:11,18,21
**principles** 4:9
**prior** 11:17,18

12:3
**prison** 1:5 11:19
11:23 12:22
**privileges** 12:15
**problem** 7:24
**problems** 11:22
11:25
**procedures** 9:24
**proceedings** 2:5
4:2
**prolonged** 13:12
**psychiatric**
11:22,24
**Public** 2:8 15:3
15:20
**punches** 9:6
**punishment**
10:23 13:4
**punitive** 13:17
**purpose** 4:4
10:12,18
**purposes** 4:25
**pursuant** 4:7
**push** 5:25
**pushed** 7:3
**put** 5:11 8:19
9:1
**P-160** 5:7 6:5
**P-170** 11:3 12:18

**Q**

**question** 5:4,18
5:24 6:7,10,17
6:20,24 7:2 8:5
8:9,12,16,20
8:23 9:5,9
14:15
**quickly** 13:23

**R**

**R** 3:2 15:1
**reaching** 10:25
**read** 5:13
**ready** 8:19
**reason** 8:14
**reasons** 10:8

**recall** 11:25
**received** 5:22
9:3
**recommend**
14:16
**record** 5:13
11:15 14:13
**recovery** 13:14
**reference** 4:7,18
6:5
**references** 5:5
**regard** 1:4 11:13
13:2
**regarding** 4:23
12:16
**related** 11:18
**relative** 15:10,12
**relatively** 5:1
**remain** 14:11
**reopening** 4:1
**repeated** 13:12
**report** 4:17 11:4
12:18 14:16
**Reporter** 2:7
15:4
**Reporting** 2:20
**required** 4:17
**resisting** 10:17
**restrictions**
14:14
**result** 7:9,17
**results** 13:5
**reveal** 14:6
**revealed** 11:2
12:6
**reveals** 12:19
14:13
**review** 4:15
**reviewed** 13:23
**rib** 9:16
**ribs** 6:2
**right** 6:8,12,22
8:21 9:4
**ring** 13:5
**Robin** 14:3
**rose** 13:15

**ROSELLI** 3:10
3:11
**Rule** 4:16
**runs** 5:15

**S**

**S** 3:2
**sadistic** 13:8
**searched** 4:20
**searches** 5:1
**second** 9:3,5
**Secondly** 11:21
**secure** 12:14
**segments** 5:11
**set** 4:11 15:8
**seven** 4:17 8:3
**severe** 13:13
**Shorthand** 15:4
**significant** 7:19
**similarly** 9:22
**sir** 5:19 8:5
**sit** 7:9
**six** 5:16
**slightly** 5:10
**small** 9:16
**SOG** 4:24 5:16
9:20,25 10:4
**soon** 5:1
**South** 2:21
**Special** 1:6,21
4:4,8,8,18
12:17 13:22
**SQUARE** 3:13
**standard** 9:24
**standing** 9:10
**started** 5:22
**State** 1:5 2:8
3:12 11:19
15:4,20
**States** 1:1 2:9
**stating** 4:4
**stenographica...**
15:7
**stepped** 8:17
**steps** 6:13
**STREET** 3:6

| | | | |
|---|---|---|---|
| striking 13:11 | top 6:17,18 | want 13:23 | 33 3:12 |
| subject 6:4 7:13 | total 6:3 | warehouse 7:11 | 330 3:6 |
| submitted 14:1 | totally 10:11 | Wasn't 9:14 | |
| substantial 11:11 14:14 | transcript 2:5 4:16 15:6 | way 6:2 | **5** |
| suicide 12:3,4,8 | transpired 13:2 | wedge 9:13 | 5 15:20 |
| supplied 10:21 | transport 10:10 | we're 7:13 | 52.1 4:16 |
| support 13:16 14:1,6 | trial 11:24 12:7 12:10 | White 2:21 | **6** |
| Sweden 11:8 | true 15:6 | William 1:9 4:3 | 609-586-2257 3:13 |
| Sweeten 1:7 4:2 4:14,19 9:19 10:9,24 11:1 11:12 13:9,12 | truly 11:5 truth 13:5 trying 7:2 Turning 8:2 | work 7:11 11:18 wouldn't 9:14 written 4:17 | **8** 856-546-1100 2:23 856-968-9201 3:7 |
| Sweeten's 12:25 14:2,7,11,14 14:19 | two 6:2 type 10:18 T-Shirt 9:8,8 | **X** XIO857 15:21 | |
| **T** | **U** | **Y** year 4:21 | |
| T 3:5 15:1,1 | underlie 4:10 | **$** | |
| taken 2:6 15:7 | undersigned 11:12 | $3,500 14:18 | |
| talks 7:6 | unidentified 13:18 | **0** | |
| tell 7:16 | unit 10:10 | 08-1295 1:2 4:3 | |
| tent 4:19,21,25 5:4,6 6:18 11:14 14:3 | United 1:1 2:9 units 9:20 10:1 | 08102 2:10 3:7 08106 2:22 08690 3:13 | |
| tents 10:1,15 | unmindful 11:1 | **1** | |
| testified 4:22 5:14 | unnecessary 10:12 13:8 | 11 1:15 5:15 11:33 2:10 | |
| testifies 6:4 | unusual 10:23 | 1337 3:12 | |
| testify 11:13 | **V** | 14 4:20 | |
| testimony 5:11 5:12,17 8:4 10:3 11:1 13:2 14:1,4 15:6 | various 5:10 varying 5:10 versus 4:2 | 15 5:16 15:21 1996 12:8 1997 4:20 11:18 | |
| Theresa 2:6 15:3 15:19 | Videoconfere... 2:20 | **2** | |
| things 12:14 | violent 10:16 | 20th 5:14 | |
| think 5:11 9:10 | visited 13:15 | 2009 1:15 5:14 15:21 | |
| third 9:3,6 | vs 1:8 | 2010 15:20 | |
| three 6:3 | **W** | 21 8:3 | |
| time 4:19 5:13 7:19,23 8:16 14:4 15:7 | W 1:21 3:12 Walker 4:12 13:10 | 251 2:21 **3** | |
| times 6:2,3 | | 30X100085700 2:7 | |
| told 5:21 8:10,14 | | | |